IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN DAVID MITCHELL, et al.,<br><br>Defendants. | MEMORANDUM DECISION<br>& ORDER<br><br>Case No. 2:08CR125DAK |

      This matter is before the court on a portion of Defendant Brian David Mitchell's Motion to Preclude the Introduction of All Lay Witness Testimony. The motion seeks to preclude the introduction of testimony by all lay witnesses including, but not limited to, staff members of the Utah State Hospital, family, friends, acquaintances, coworkers, and ecclesiastical leaders of Defendant at the hearing to determine Defendant's competency to stand trial. Because of scheduling conflicts, the parties agreed to brief and argue the portion of this motion dealing with the testimony of the victim, Ms. Elizabeth Smart, prior to addressing the other witness testimony at issue in the motion. Defendant retains the right to file a reply memoranda in support of its motion with respect to the other proposed lay witness testimony.

      On September 25, 2009, the court held a hearing on the portion of the motion pertaining to Ms. Smart. At the hearing, Plaintiff was represented by David F. Backman and Richard N. Lambert, and Defendant was represented by Robert L. Steele, Parker Douglas, and Audrey K. James. The court took the motion under advisement. Having carefully considered the parties'

memoranda submitted prior to the hearing and their arguments at the hearing, as well as the law and facts relevant to the motion, the court enters the following Memorandum Decision and Order with respect to the portion of Defendant's motion pertaining to Ms. Smart.

## BACKGROUND

In preparation for the upcoming competency hearing, the United States provided Defendant with a preliminary witness list. The list identified 39 lay witnesses. The anticipated scope of the lay witness testimony is observations of and interactions with Mr. Mitchell. The United States also provided Defendant with reports detailing the contents of lay witness interviews with government officials. The report of the psychiatric examination conducted by the United States' expert, Dr. Michael Welner, incorporates information from many of these witness interviews, including an interview with Ms. Smart. Many of these interviews were conducted after other experts' prepared their competency evaluations of Defendant.

Through the briefing of this motion, the United States has represented that it intends to call Ms. Smart at the competency hearing to testify as to facts and opinions relating to: Defendant's lack of religious focus; how Defendant's conduct was inconsistent with his use of religious terminology and references to himself as a prophet; Defendant's manipulation of others; Defendant's ability to lie to make his conduct appear to conform with societal norms when it was to his advantage; and how Defendant has concealed, denied, and rationalized his conduct.

## DISCUSSION

### I. Legal Standard for Competency Determination

To determine the relevance and admissibility of Ms. Smart's proposed testimony, it is necessary to consider the issue in the context of the legal standards applicable to a competency

hearing.  "[T]he Constitution does not permit trial of an individual who lacks 'mental competency.'"  *Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008).  In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court defined the legal standard for assessing competency to stand trial as including: "(1)'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding."  *Edwards*, 128 S. Ct. at 2383 (quoting *Dusky*, 362 U.S. at 402).  Unlike the insanity defense which concerns the defendant's mental state at the time of the offense, the issue of competency to stand trial focuses on the defendant's current mental state.  *See United States v. Gold*, 790 F.2d 235, 238 (2d Cir. 1986).

**II. Relevance and Admissibility of Testimony**

Defendant's motion to exclude lay witness testimony from the competency hearing states that it is based on relevance, danger of unfair prejudice, considerations of delay, undue waste of time, and needless presentation of cumulative evidence pursuant to Rule 401 and 403 of the Federal Rules of Evidence.  Rule 401 defines relevant evident as that evidence "having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.  Rule 403, however, allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

Defendant's counsel appeared to back away from these challenges to Ms. Smart's testimony at the hearing and focused mainly on whether she could provide opinion testimony

under Federal Rule of Evidence 701. Nonetheless, the court will address all of the arguments presented in Defendant's motion because it is unclear from the oral argument whether Defendant was conceding relevance and admissibility or merely relying on the arguments in the briefing for those challenges.

### A. Rule 403 – Relevance

Defendant argues that Ms. Smart's lay observations of Defendant will not help the court in trying to answer the competency question. Several courts, however, have allowed lay witness testimony in determining competency: "the Court may rely on, in addition to expert testimony, lay witness testimony concerning the [defendant's] rational behavior, and cross examination of [defendant's] expert." *Bundy v. Dugger*, 675 F. Supp. 622, 634 (M.D. Fla. 1987).

In this case, Defendant has made lay witness testimony relevant by refusing to submit to any psychological evaluations or diagnostic tests. Dr. Golding, who prepared a report for the state proceedings, specifically recognized that Defendant's refusal to cooperate lessens the reliability of the expert opinions. It is also the likely cause of conflicting expert opinions as to Defendant's competency. In *State v. Robertson,* the court noted that both experts testified that "patient cooperation was very important in diagnosing competency and that without cooperation any test result was questionable." 932 P.2d 1219, 1224 (Utah 1997). Defendant's refusal to cooperate has made fact evidence from collateral sources necessary to a determination of his competency.

Defendant attacks the relevance of testimony that is based on events that occurred many years ago to a determination of Defendant's current mental state. In evaluating the competency issue, Defendant asserts that the court should not be sidetracked by testimony of Mr. Mitchell's

4

life and the specifics of his alleged crime. But all of the expert reports give Defendant's history in varying degrees of detail in order to diagnose his current mental state. Thus, even though Defendant attacks the utility of lay testimony, such as Ms. Smart's, which is based on interactions that occurred many years ago, it is well-established that evidence of Defendant's prior conduct can give the court a better understanding of Defendant's current condition. In addition, the United States has presented persuasive arguments that certain aspects of the crime itself can be relevant to the competency determination.

Moreover, the United States maintains that Defendant's mental condition has not varied throughout the years. The United States should have an opportunity to put on enough evidence to establish that fact. And, if that fact can be established, conduct from many years ago could be considered as probative as evidence of Defendant's present conduct.

Defendant relies on a Sixth Circuit case in the insanity context which states that "when a lay witness' direct knowledge of the defendant is brief and superficial and far removed in time from the commission of the crime or the trial, the testimony usually should not be admitted." *United States v. Smith*, 437 F.2d 538, 541 (6th Cir. 1970). In *Smith*, the lay witness testimony was offered by a commissioner who interacted with the defendant during a preliminary hearing and an FBI agent who listened to the defendant's conversation during a ride to the police station. *Id.* In stark contrast with *Smith*, Ms. Smart's proposed testimony consists of close interactions over a nine-month period and cannot be characterized as superficial.

The United States contends that lay witness testimony is especially relevant in a case such

as the present case where a defendant may be malingering or manipulating the system.[1] *See, e.g.,*
*United States v. Birdsell*, 775 F.2d 645, 650-51 (5th Cir. 1985); *United States v. Gigante*, 925 F.
Supp. 967, 969-77 (E.D.N.Y. 1996); *State v. Robertson*, 932 P.2d 1219, 1224 (Utah 1997).
These cases recognize that lay witnesses can provide valuable evidence in situations involving
malingering because the evidence provided by lay witnesses, who have more lengthy interactions
with the defendant in question, is often not the type of evidence that is available to reviewing
experts during their limited periods of observation.

Defendant claims that these cases are distinguishable from the instant case. Defendant
argues that unlike these cases, Ms. Smart will not be providing any new evidence because all of
the experts had access to transcripts of her interviews. But, the experts in this case, faced with a
defendant who would not participate, have all relied on collateral sources to varying degrees,
including Ms. Smart's testimony. It will be valuable, as will be discussed more below, for the
court to assess whether the experts have properly characterized and used her testimony in their
analyses.

Moreover, the import of these cases is that lay witnesses often have valuable evidence
because of the length of time they spend with the defendant. "It appears imminently reasonable
that the district court would rely on the observations of those witnesses in long-term daily contact

---

[1] Defendant asserts that evidence cannot be "especially" relevant, it is relevant or it is not. While Defendant chooses to attack the use of "especially," the court finds this attack largely one of semantics. The United States was not only responding to an attack of the evidence's relevance but one under Rule 403 as well. Rule 403, which focuses on the probative value of relevant evidence, makes the court determine whether certain evidence is more probative than prejudicial. When weighing such evidence under Rule 403, some evidence will be especially probative. The court finds no basis for attacking the United States' characterization of especially probative evidence as especially relevant to the issues before the court.

with the patient rather than conclusions based on a relatively brief period of examination." *Birdsell*, 775 F.2d at 650-51.  Ms. Smart can provide testimony as to Defendant's conduct over the course of a nine-month period.  That length of time is far more intensive that any of the expert witnesses in this case.

In addition, the cases recognize that there can be a stark difference between the conduct of a defendant in a day-to-day situation where there is little reason to believe one is being evaluated and a formal interview being conducted for the sole purpose of evaluating the defendant's behavior.  In *Robertson*, the court noted that the defendant "showed a markedly different speaking ability, depending upon whether he was being formally observed or merely dealing with staff." 932 P.2d at 1224.  Thus, the court finds that Ms. Smart's proposed testimony is relevant to whether Defendant acted different on a day-today basis than he did in controlled interview settings.

The United States also argues that a key issue in determining competency will be whether Defendant is so preoccupied with his religious beliefs that he cannot make competent decisions. Given Defendant's refusal to participate fully in evaluations and his limited time in interviews with the psychiatrists and psychologists, lay witness testimony is particularly relevant on this issue.  Ms. Smart can provide relevant testimony that will give the court a full picture of Defendant's day-to-day interactions her and whether he was preoccupied with religion.  The government represents that much of the proposed testimony from Ms. Smart relates to whether Defendant was, in fact, preoccupied with his religious beliefs.

The court concludes that Ms. Smart's proposed testimony is relevant to the issues involved in the court's determination of competency.  Accordingly, the court finds no basis for

concluding that Ms. Smart's proposed testimony should be excluded under Rule 401 standards.

### B. FRE 403 – Probative Value versus Potential Prejudice

After making the determination that Ms. Smart's proposed testimony is relevant to the issues involved in determining competency, the court must then determine under Rule 403 whether the value of such testimony is outweighed "by the danger of unfair prejudice . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Defendant first asserts that Ms. Smart's observations relevant to Defendant's existing mental state have been incorporated into Dr. Welner's comprehensive report and live testimony as to those same undisputed facts is a waste of court time and a needless presentation of cumulative evidence. Dr. Welner's report outlines in detail the relevance of her testimony to Defendant's capacity and ability to understand the charges against him, and his ability to consult with his attorneys and aid in his defense. The United States points out, however, that while Defendant argues that her testimony should be excluded as cumulative because Dr. Welner's report summarizes the information, Defendant seeks in another motion before the court to exclude Dr. Welner as a witness because his report does not fairly describe the information from lay witnesses.

Live testimony developed through traditional direct and cross examination would overcome any concerns about how Dr. Welner characterizes the factual evidence. In addition, to the extent that Defendant questions the veracity of the testimony, given that it is based on events from many years ago, live testimony will allow the court to hear from the witness firsthand to determine credibility and the weight to properly accord such evidence. While acknowledging at

the hearing that Ms. Smart's testimony has remained consistent in interviews spanning several years, Defendant also appeared to question whether the testimony was fully consistent. And in his reply memoranda, Defendant states "to the extent that her recollection of events has changed in the intervening time." Faced with such remarks, the court cannot conclude that her live testimony is a waste of time or the needless presentation of cumulative evidence. Moreover, Defendant's claims that the evidence is undisputed are made when it is advantageous to his arguments regarding cumulative evidence, but it is not consistent with many of his other arguments throughout the brief and in other motions. The court, therefore, finds significant value in being able to hear the underlying factual testimony so the court can evaluate how accurately that testimony is characterized and used in the experts' evaluations.

      The defense's strategy of appearing not to dispute the testimony not only appears less than candid but it could raise issues later in the proceedings. If the court allows live testimony and Defendant is given a full opportunity to cross examine such testimony, there can be no question regarding the vetting of such evidence. Moreover, the general rule is that "the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." *Old Chief v. United States,* 519 U.S. 172, 189 (1997). Parties are traditionally allowed to present their cases in the best manner they see fit. The court will not interfere with a party's strategy unless the court is assured that it presents prejudicial concerns. The court finds no such concerns with the United States' strategy to present live testimony. The United States represented at the hearing that it intends to narrow down the witness list and to focus only on issues pertinent in the competency context. If the evidence presented at the hearing becomes cumulative or irrelevant to the competency decision, the court can limit the testimony at that

time. The court finds no basis at this time for restraining the Untied States' strategy for presenting its case.

Defendant also questions the probative value of lay witness testimony because the Tenth Circuit has recognized that it may be "very difficult" for "untrained people" to recognize when someone is suffering from a paranoid delusional system. "[A] defendant suffering from this illness may outwardly act logically and consistently but nonetheless be unable to make decisions on the basis of a realistic evaluation of his own best interests." *Cook v. Lafferty*, 949 F.2d 1546, 1555 (10th Cir. 1991). Other courts, however, have concluded that "objections to such lay witness testimony relate more to weight than to admissibility." *People v. Medina*, 799 P.2d 1282, 1292-93 (Cal. 1990). Courts have recognized that

> lay witnesses may testify upon observed symptoms of mental disease, because mental illness is characterized by departures from normal conduct. Normal conduct and abnormal conduct are matters of common knowledge, and so lay persons may conclude from observation that certain observed conduct is abnormal. Such witnesses may testify only upon the basis of facts known to them. They may testify as to their own observations and may then express an opinion based upon those observations. Of course the testimony of a lay witness with training in this or related fields may have more value than the testimony of a witness with no such training.

*Naples v. United States*, 344 F.2d 508, 515 (D.C. Cir. 1964).

In *Medina*, the defendant contended that the court erred in permitting the prosecutor to elicit an opinion for a lay witness regarding the defendant's mental state. 799 P.2d at 1292. The lay witness was a deputy who had a conversation with the defendant at the county jail following the defendant's arrest. *Id.* The conversation concerned the defendant's housing situation and his need for protective custody. *Id.* The court found no error in the district court allowing the

deputy to give lay opinion testimony as to whether the defendant appeared to understand their conversation. *Id*. The court found the challenged testimony was reasonably relevant to the question of whether the defendant was presently able to communicate with his counsel. *Id.* at 1293.

The court concludes that Defendant's concerns regarding Ms. Smart's testimony goes more to the weight afforded the testimony, not its admissibility. "The finder of fact in a hearing as to a defendant's competency to stand trial is generally the sole judge of the credibility of witnesses, and the weight to be given their testimony and other evidence. It is for the finder of fact to resolve conflicts in the testimony of witnesses." 21 Am. Jur. 2d *Criminal Law* § 103 (2009).

Defendant also argues that lay witnesses, such as Ms. Smart, should not provide live testimony at the competency hearing because it is the expert witness's job to sift through the raw data and glean the important facts to the legal framework for determining competency. Defendant states that neither counsel nor the court is professionally equipped through education or experience to take raw facts from lay witnesses, determine the significance of those facts within the mental health context, and apply the relevant facts to the question of Defendant's mental status. Defendant cites to no authority for this proposition and the argument is squarely at odds with the court's role in determining competency. The court acts as a finder of fact and determines the weight to be given the testimony and other evidence. *See* 21 Am. Jur. 2d *Criminal Law* § 103 (2009). The court's role in this regard includes expert testimony as well. The court also has several procedural mechanisms at its disposal with respect to making the ultimate determination regarding competency. In *Gigante*, the court made findings of fact

regarding lay witness testimony and ordered the experts to accept the findings as true and reassess the defendant's competency. 925 F. Supp. at 969-77. The court, therefore, finds no merit in Defendant's argument that live testimony from lay witnesses should be precluded based on concerns regarding the court's ability to apply such facts to the ultimate determination of competency.

Defendant next contends that allowing Ms. Smart's testimony on issues only tangentially related to Defendant's present competency could taint a future jury pool. In essence, Defendant contends that the probative value of her testimony does not outweigh the potential prejudice of influencing the jury pool. The case has received substantial media coverage, and the testimony must be carefully circumscribed to address competency without diverging into sensationalistic details or creating a trial within a trial on extraneous issues. Defendant asserts that the court's evaluation of the competency issue should not be sidetracked by extended testimony over the facts of Defendant's life and the specifics of the alleged crime.

The United States responds that a claim that pretrial publicity violates a defendant's right to a fair trial is usually only raised after the pre-trial publicity has occurred or it becomes apparent during voir dire that publicity has tainted the jury pool. *See Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009). The Tenth Circuit has recognized that "'pre-trial publicity in topical criminal cases is inevitable.'" *Id.* at 889 (citation omitted). The local trial of newsworthy cases cannot become the exception rather than the rule. *Id.*

Defendant does not articulate what proposed testimony he believes would taint the jury pool. Thus any such prejudice can only be considered speculative at this point. Speculation regarding potential prejudice is not an appropriate basis for excluding relevant evidence. The

court also cannot presume that prejudice will arise from conducting necessary proceedings in the matter. Even if the court found concerns regarding prejudice warranted, the court could employ other procedures to allay potential prejudice before it precluded relevant evidence from the proceeding–such as sealing the proceedings. Tellingly, Defendant did not suggest alternatives to precluding the testimony. Moreover, at any time during the hearing when the solicited testimony appears to be seeking evidence that is more prejudicial than probative, defense counsel can object and the court can restrict testimony on a per question basis rather than a blanket preclusion of testimony. The court concludes that the jury pool concern is not a basis for finding all of the proposed testimony more prejudicial than probative.

Although Defendant raises several concerns as to potential prejudice from the court allowing Ms. Smart to testify at the competency hearing, the court finds no basis for concluding that her testimony should be excluded on the grounds that its probative value is outweighed by potential prejudice or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. This ruling is with respect to her ability to testify based on the general descriptions of her proposed testimony as represented to the court by the United States. Defendant, however, is not foreclosed from raising objections at the hearing with respect to specific questions.

### C. Rule 701

If the court allows Ms. Smart to testify, Defendant argues that her opinion testimony must be carefully tailored.[2] Rule 701 of the Federal Rules of Evidence governs opinions from lay

---

[2] Neither party contends that Ms. Smart is an expert witness on any issue before the court.

witnesses. Rule 701 provides that lay witness testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Defendant attacks Ms. Smart's ability to offer opinions under each of these limitations.

Under subsection (a), Defendant cites to *Smith* for the proposition that it is difficult for lay testimony to be helpful as to the "lack of something." But, unlike the lay witnesses in *Smith*, Ms. Smart's testimony covers a nine-month period of time and her testimony is not confined to how "normal" Defendant appeared. The United States has represented that Ms. Smart's testimony will cover several subjects, such as Defendant's lack of religious focus, his manipulation of others, and his ability to lie to make his conduct appear to conform with societal norms when it was to his advantage. This type of testimony is not just testifying to "a lack of something." In addition, the court has already discussed the helpfulness of lay witness testimony in a case where a defendant may be malingering.

Under subsection (b), Defendant argues that he does not believe the testimony would sort out disputes or make clear a not-so-clear narrative. Defendant contends that Ms. Smart's testimony has not changed significantly and all of the experts have had the opportunity of looking at her testimony. There is, however, a dispute between the expert's in this case as to Defendant's competency. And, each of the experts use Ms. Smart's to varying degrees in forming their opinions. There are also questions regarding the expert's use of Ms. Smart's testimony. Because of the dispute between the experts and the dispute regarding their use of her testimony, the court

finds that her live testimony would be helpful to the determination in issue.

Under subsection (c), Defendant argues that Ms. Smart cannot testify as to opinions that are based on specialized knowledge or too close to the ultimate decision of competency. Rule 701 precludes lay opinions that are based on scientific, technical, or specialized knowledge. But none of Ms. Smart's proposed testimony suggests that she will be opining on anything other than her lay observations. And, the United States represented at the hearing that Ms. Smart will present mainly facts, with limited opinion testimony. Moreover, the United States has an expert witness to opine as to mental diagnoses and other specialized matters. The court does not believe there will be a significant issue with respect to Ms. Smart's opinion testimony coming too close to the ultimate issue, but, to the extent that the United States veers into this area while taking her testimony, the matter can be dealt with during the specific questioning at the evidentiary hearing.

In conclusion, the court concludes that Ms. Smart's proposed testimony is relevant to the issues to be determined with respect to competency under Rule 401 and it is admissible at the competency hearing under Rule 403. In addition, Ms. Smart can testify as to her opinions consistent with Rule 701. Accordingly, the court denies Defendant's Motion to Preclude the Introduction of All Lay Witness Testimony as to the portion of the motion regarding Ms. Smart's testimony.[3]

---

[3] Defendant acknowledges that even though he argues against the admission of any lay witness testimony, as the victim in this case, the court may have more latitude in allowing Ms. Smart to testify under the Crime Victims' Rights Act. The Crime Victims' Rights Act states that the victim has the right "to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing or any parole proceeding," but it does not include typical evidentiary hearings such as competency hearing, motions to suppress, or trial. 18 U.S.C. § 3771(a)(4). This exclusion may have been a recognition that the victim's testimony would usually be allowed as relevant in these types of evidentiary hearings whereas it may be excluded from more procedural hearings. Or it may be an acknowledgment that the admission of

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Preclude the Introduction of All Lay Witness Testimony is DENIED as to the portion of the motion regarding Ms. Smart's proposed testimony. Pursuant to the prior scheduling agreement between the parties, the evidentiary hearing to take Ms. Smart's testimony will be held Thursday, October 1, 2009, at 9:00 a.m.

DATED this 28th day of September, 2009.

_____
DALE A. KIMBALL
United States District Judge

---

testimony at such hearings would be governed more appropriately by the rules of evidence. In any event, while the Act does not grant an affirmative right to be heard at a competency hearing, the Act's intent is to provide a victim with appropriate access to the proceedings and it dictates that the victim has a right to be "treated with fairness." Because the court finds Ms. Smart's testimony relevant and admissible under the Federal Rules of Evidence, the court need not determine whether a competency hearing is the type of hearing at which the CVRA would allow a victim to testify.