# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          Plaintiff,<br><br>v.<br><br>**BRIAN DAVID MITCHELL, et al.,**<br><br>          Defendants. | **MEMORANDUM DECISION**<br>**& ORDER**<br><br>Case No. 2:08CR125DAK |

On November 9, 2009, the court held a hearing on the following motions relating to the upcoming competency hearing: (1) Defendant's Motion to Preclude the Introduction of All Lay Witness Testimony As Irrelevant, Unfairly Prejudicial, and Cumulative; (2) Defendant's Motion to Exclude Writings of Ervil LeBaron and Expert Testimony of Richard Forbes and Daniel Peterson; (3) Defendant's Motion to Exclude Testimony of Dr. Michael Welner as Inadmissible Under Rule 702; and (4) Defendant's Second Motion to Compel Evidence.[1]  At the hearing, Plaintiff was represented by Brett L. Tolman, Richard N.W. Lambert, Diana Hagen, and David F. Backman, and Defendant was represented by Robert L. Steele, Parker Douglas, Audrey K. James, and Kent Hart.  The court took the motions under advisement.  Having carefully considered the parties' memoranda submitted prior to the hearing and their arguments at the hearing, as well as the law and facts relevant to the motion, the court enters the following

---

[1] After the hearing, defense counsel notified the court that the parties had resolved the discovery issues relevant to the motion to compel.  That motion, therefore, is moot.

Memorandum Decision and Order.

## DISCUSSION

**I.      Motion to Preclude the Introduction of All Lay Witness Testimony as Irrelevant, Unfairly Prejudicial and Cumulative**

Defendant's motion seeks to preclude at the competency hearing the introduction of testimony by all lay witnesses, including staff members of the Utah State Hospital, family, friends, acquaintances, coworkers, and ecclesiastical leaders of Defendant. The anticipated scope of the lay witness testimony is observations and interactions with Defendant. Defendant's motion to preclude this testimony is based on relevance, danger of unfair prejudice, considerations of delay, undue waste of time, and needless presentation of cumulative evidence pursuant to Rule 401 and 403 of the Federal Rules of Evidence.[2]

Because of scheduling issues, the court already ruled on the portion of this motion relating to the victim, Ms. Elizabeth Smart. Much of the court's reasoning in that September 28, 2009 Order applies equally to all lay witness testimony. For example, the court determined that Defendant's conduct in this case has made lay witness testimony relevant to a determination of his competency. Defendant takes issue with the court expressing in its prior Order that the government had presented evidence suggesting that Defendant may be malingering. The court, however, made no finding that Defendant was malingering. The court only acknowledged that

---

[2]     Rule 401 defines relevant evident as that evidence "having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence. Fed. R. Evid. 401. Rule 403, however, allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id.* 403.

some evidence could suggest that fact.  The court recognizes that Defendant's failure to participate in psychological testing could also be the result of mental illness.  It cannot be disputed, however, that there is an issue in this case as to whether Defendant is malingering.  As a result, the court concludes that lay witness testimony is relevant.

At the November 9, 2009 hearing, defense counsel recognized that based on the reasoning of the court's prior Order, the only remaining issues to be decided by this motion relate to specifics, such as whether a given lay witness' testimony is cumulative.  With respect to the cumulative nature of the proposed lay witness testimony, the government has agreed to narrow its proposed witnesses from its preliminary list identifying 39 lay witnesses.  Because the extent of the government's narrowing is uncertain at this time, Defendant asked the court for the opportunity to address his concerns after he is provided with the revised witness list.  Defendant also acknowledged that many of his remaining concerns as to specific witnesses and the scope of those witnesses' testimony may best be addressed at the competency hearing.

The court agrees that a determination on the remaining issues cannot be made prior to the government's production of its revised witness list.  If Defendant can address certain global issues relating to the witnesses on the revised list prior to the hearing, it is allowed to file a revised motion within five days of the government's production of its revised witness list.  Otherwise, the court will address Defendant's remaining objections at the competency hearing.

The court advises the government that it expects the lay witness testimony presented at the competency hearing to be limited and brief.  The government's purpose for this testimony is to support its positions that Defendant's mental health has not significantly changed throughout his life, Defendant is not preoccupied with religion, and the government's expert witness report

properly characterizes the lay witness testimony. The testimony to support these arguments should be tailored to include only that testimony that is necessary to establish these positions as they relate to competency. The court cautions the government against the presentation of cumulative lay witness testimony. The bulk of the competency hearing should be expert testimony.

II.  **Defendant's Motion to Exclude Writings of Ervil LeBaron and Expert Testimony of Richard Forbes and Daniel Peterson**

Defendant seeks to preclude the testimony of the government's proposed expert witnesses Richard Forbes and Daniel Peterson and the introduction of "The Book of the New Covenant," written by Ervil LeBaron, at the competency hearing. Forbes is a retired police officer who has studied cults and attended various high-profile trials, including the Manson trial. Forbes was involved as an investigator in the LeBaron case and has taught a course on cults at Salt Lake Community College. The government intends to use Forbes to introduce portions of Ervil LeBaron's "The Book of the New Covenant" to show certain similarities between Defendant's writings and beliefs and those of LeBaron and his followers. Peterson is a professor of Islamic Studies who the government intends to call as an expert witness regarding Judeo-Christian scripture. Peterson is anticipated to testify that he has read Defendant's "Book of Immanuel David Isaiah" ("BIDI") and that it is coherent and its contents are not outside the realm of "normal, cultish religious thinking."

Defendant contends that "The Book Of The New Covenant" by Ervil LeBaron, and the testimony of both Forbes and Peterson are irrelevant to the issue of Defendant's present competency to stand trial and should be excluded pursuant to Rule 401 of the Federal Rules of

Evidence. Furthermore, Defendant argues that any limited relevance is substantially outweighed by the danger that this evidence will confuse the issues, create undue delay, and constitute a waste of time under Rule 403.

When he filed his motion, Defendant contended that the government's evidence is irrelevant for two reasons. First, Defendant argued that whether other fringe groups or individuals share similar delusions is irrelevant to the finding that Defendant's specific beliefs are bizarre as that word relates to a psychological diagnosis. Second, Defendant claimed that the classification of a delusion as bizarre is not relevant to competence and only relates to future treatment. Defendant asserts that he can be determined incompetent whether his delusions are bizarre or non-bizarre.

Richart DeMier, the psychologist who performed Defendant's evaluation for the Bureau of Prisons, diagnosed Defendant with "schizophrenia, paranoid type, a severe and debilitating psychotic illness." DeMier based his diagnosis on his finding that Defendant's delusional beliefs were bizarre. In this context, a finding that delusional beliefs are bizarre means that the delusional beliefs are not plausible. Under established psychological diagnostic criterion, DeMier's finding of bizarre delusional beliefs necessitated a diagnosis of schizophrenia rather than delusional disorder, which has been the diagnosis of other psychologists who have evaluated Defendant.

Rather than focusing on the distinction between whether the delusions are bizarre or non-bizarre, however, the government states that the purpose for introducing evidence from Forbes and Peterson relates to whether Defendant's beliefs are delusional or extreme religious beliefs. The government points out that the conclusion of DeMier and others finding Defendant

incompetent is based in large measure on a determination that Defendant is delusional. If Defendant is not delusional, then a diagnosis of either delusional disorder or schizophrenia cannot survive. And without a substantiated diagnosis of mental disease or defect the court cannot make a finding of incompetence.

The government intends to introduce this evidence in large part to impeach the findings of Dr. DeMier. After making his case for schizophrenia, DeMier then addresses several possible contrary views–malingering, personality disorder, and whether there is a cultural explanation for Defendant's beliefs. DeMier did not recognize a cultural explanation as a potential explanation for Defendant's views. DeMier stated in his analysis of the issue that he was "unaware that [Defendant's] beliefs are shared by any fringe or radical element of that (or any other) church. The defendant's beliefs cannot be easily understood simply by contemplating then within the appropriate cultural context."

The government contends that it should be allowed to impeach these findings and introduce evidence that would demonstrate that DeMier's finding is based on inadequate information. The government intends to use Forbes to show that there is a cultural explanation for Defendant's views. Peterson, an authority on religious texts, will speak to the coherency of Defendant's writings and the source material from which Mitchell's BIDI is drawn. The government asserts that the testimony of these witnesses not only impeach DeMier's findings but inform and support Dr. Welner's and Dr. Gardner's conclusions that Defendant is not delusional.

Defendant contends that this evidence is not relevant because the content of Defendant's beliefs does relate to whether Defendant's beliefs are delusional or extreme religious beliefs. Defendant relies on the analysis Dr. Golding, who acknowledges in his report that distinguishing

between extreme religious beliefs and delusions is fraught with difficulty. Nonetheless, Dr. Golding sets out standards of professional diagnostic practice which he states can help to "differentiate zealous belief from delusion." These factors include (1) examining the defendant's background and his overall belief system; (2) looking for evidence of delusional thought processes such as "passivity experiences," or (3) referential thinking, (4) the extent to which the belief system causes disruptions in social and vocational functioning, (5) "the extent to which an individual violates the social fabric of everyday interactions in such a manner that they are rejected, avoided or labeled 'crazy,'" (6) the degree of disruption of one's life as a consequence of action on the belief, which is more profound when an individual is delusional versus when they simply hold extreme beliefs.

 Defendant argues that while this is not an exclusive list of factors that can be used to differentiate extreme beliefs from delusions, Dr. Golding points out that religious belief cannot be differentiated from delusion based on the types of actions that are called for by the belief system. It is not the content of the beliefs but rather the process of how they are arrived at, adhered to, experienced, practiced, on whom they are focused, and how they affect the person's life that helps to distinguish them as delusions rather than extreme religious beliefs. Defendant asserts that the point is whether Defendant's entrenched beliefs constitute delusions, and if so, whether those delusions have so distorted the mental filter through which he experiences the world that he is presently incapable of rationally understanding these proceedings, or participating rationally in his defense because his delusional beliefs make him incapable of identifying and pursuing legal strategies that are in his legitimate best interests.

 Defendant contends that the Forbes' testimony comparing the content of LeBaron's

beliefs to those of Defendant is not helpful in the context of distinguishing between extreme beliefs and delusions unless they somehow relate to the factors identified by Dr. Golding. But those factors include considerations of Defendant's "overall belief system." Clearly, that factor looks at the content of the belief system to some degree. Moreover, Defendant acknowledges that the process of how Defendant arrived at his beliefs is relevant to the determination. If there is a cultural explanation to how his beliefs were arrived at, the government is entitled to present evidence to that extent.

Furthermore, Dr. DeMier's finding that there was not a cultural explanation for Defendant's belief necessarily makes testimony related to a cultural explanation relevant. The government is entitled to present evidence impeaching such a conclusion. The government proffers that an example of how easy it may be for one who is unfamiliar with Defendant's culture to cite Defendant's BIDI as evidence of delusions is demonstrated in DeMier's use of a quotation from BIDI that he states shows that Mitchell believes he has powers greater than God or that he can control God. The quotation is almost a direct quote lifted from the Book of Mormon. Defendant has merely applied the same commendation to himself that is given to the prophet Nephi. While this may or may not demonstrate that the belief is delusional, it provides a factual context in which to make that assessment and demonstrates the helpfulness of Peterson's testimony. Moreover, the government cannot simply make arguments that it believes the texts are similar. It is entitled to present evidence from an expert on Judeo-Christian texts. And, as stated, an expert on religious texts can identify such facts and provide helpful analysis to the court and mental health experts. A mental health analysis, especially one that must consider whether there is a cultural context for certain beliefs, cannot be made in a factual vacuum.

Defendant also objects that Peterson's testimony as to the coherency of Defendant's BIDI is an improper mental health diagnosis by an expert not qualified to make such a diagnosis. It is undisputed that Peterson cannot make a mental health finding but, as an expert in Judeo-Christian religious texts, he can opine on the readability of the text. A mental health professional is not required for such comparisons. Peterson is not making a mental health diagnosis in testifying as to the coherency of the writing in general. His findings and factual analysis, however, can be useful to the analyses by mental health experts. Each evaluator has looked to BIDI as a source in making his or her analysis regarding competency. Defendant argues that Peterson's testimony is irrelevant because it is possible to be delusional and not functioning impaired. But such a fact does not limit the type of evidence that may be relevant in a mental health expert's diagnosis or this court's determination of whether Defendant can understand the nature of the proceedings against him and aid in his own defense. Therefore, the court has no concerns regarding Peterson's testimony as to the readability or coherency of Defendant's BIDI.

In order to impeach the findings of DeMier, the government is required to introduce evidence that would support a finding that there is a cultural explanation for Defendant's beliefs. The government is entitled to make its case by presenting factual evidence demonstrating comparisons between Defendant and LeBaron and other religious fringe groups who may have influenced Defendant's belief system. As long as the evidence and comparisons are not unduly prolonged, the government has a right to establish a cultural context for Defendant's beliefs. But the court cautions the government from introducing the same evidence from both Peterson and Forbes.

To date, Defendant has made no showing that the proffered testimony would cause

confusion, delay or waste time to the extent that the witnesses should be excluded in their entirety. Because the scope of the testimony is not clear at this point, Defendant may raise these objections at the hearing. The court, however, does not find any of these objections to preclude the proposed testimony in its entirety. Rather, the court sees such objections as a basis for limiting the testimony from these witnesses.

With respect to Defendant's arguments that clarification of Defendant's beliefs as "bizarre" is relevant only to the specific diagnosis but not to the issue of competency, the government contends that it is relevant whether DeMier is right or wrong in his diagnosis. An evaluator who is wrong about the nature of the underlying illness may be viewed skeptically as to his ultimate conclusion on competency. It is proper for the government to impeach an expert witness on any of his observations, findings or conclusions. This type of impeachment is routinely done.

The court finds the evidence relevant to the court's determination of competency. In addition, the court finds no basis for concluding that the introduction of such evidence would be unfairly prejudicial or result in undue delay or a waste of time. The government should, however, tailor each expert's testimony so as not to introduce cumulative evidence. Accordingly, the court denies Defendant's Motion to Exclude Writings of Ervil LeBaron and Expert Testimony of Richard Forbes and Daniel Peterson.

**III.    Motion to Exclude Testimony of Dr. Michael Welner As Inadmissible Under Federal Rule of Evidence 702**

Defendant seeks to exclude the testimony of the government's expert, Dr. Michael Welner under Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added). Under Rule 702, the court must satisfy itself that the proposed expert testimony is both reliable and relevant. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006); *see also United States v. Lopez-Hodgson*, 2009 WL 1483131, *5 (10th Cir. 2009). Reliability questions may concern the expert's data, method, or his application of the method to the data. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

To determine the proffered testimony's reliability, the Court assesses the reasoning and methodology underlying the expert's opinion. *Rodriguez-Felix*, 450 F.3d at 1123. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* detailed four, nonexclusive factors that the Court should consider in making its reliability assessment: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community. *Rodriguez-Felix*, 450 F.3d at 1123 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993). Subsequently, the Court held that the *Daubert* factors' relevance in assessing the reliability issue depends on the nature of the issue, the expert's particular expertise, and the subject of the expert's testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999).

Most relevant to the motion at issue in this case, the testimony must be based on scientific knowledge, which implies a grounding in methods of science based on actual knowledge, rather than subjective belief or unsupported speculation. *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004). "An inference or assertion must be derived by the scientific method and must be supported by appropriate validation-i.e., good grounds, based on what is known." *Lopez-Hodgson*, 2009 WL l483131, at *5 (emphasis added) (citing *Dodge v. Cotter*, 328 F.3d 1212, 1222 (10th Cir. 2003). Thus, regarding reliability, "it must be shown that the method employed by the expert in reaching the conclusion is scientifically sound and the opinion is based on facts which satisfy Rule 702's reliability requirements." *Id.*

Defendant claims that Dr. Welner's Report is not based on sufficient facts to satisfy Rule 702's reliability requirement because it misrepresents the factual record and omits facts and findings contrary to Dr. Welner's conclusion such that it constitutes a piece of advocacy rather than an objective evaluation. Defendant also asserts that Dr. Welner's report is methodologically deficient under Rule 702 because it fails to meaningfully discuss the differing views expressed in the report by Defendant's treating physician at the Utah State Hospital, Dr. Paul Whitehead. Finally, Defendant argues that the Report's claim that it is "peer reviewed" lacks any credibility because it is not "peer reviewed" in the generally accepted manner.

Defendant seeks to conduct voir dire of Dr. Welner at the competency hearing prior to the court being able to fully determine this motion. The government appears to agree to this procedure. But to the extent that the court can rule on the issues raised in Defendant's motion prior to the hearing, the court believes such rulings will allow the hearing to proceed more efficiently. The court finds no basis in the issues raised in Defendant's motion for precluding Dr.

Welner's testimony. Defendant's attacks do not call into question the underlying admissibility of Dr. Welner's testimony and report. Rather, they are the basis for attacking his findings and conclusions on cross examination.

For purposes of the court's gatekeeping function under *Daubert*, the court concludes that Dr. Welner's testimony regarding Defendant's competency is reliable expert opinion under Rule 702. The government has met its burden of showing that its proffered expert's testimony is admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). Defendant has not challenged Dr. Welner's qualifications as an expert. Instead, the focus is on the second prerequisite for the admission of expert testimony--reliability. In determining reliability, it is not necessary to prove "that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community." *United States v. Lopez-Hodgson*, 2009 WL 1483131, *5 (10th Cir. May 28, 2009). Rather, courts determine whether the "expert witness 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *United States v. Baines*, 573 F.3d 979, 989 (10th Cir. 2009).

The court concludes that Welner's testimony meets the standards for admissibility under Rule 702. First, there is no basis for concluding that his testimony is not based on sufficient facts or data. In reaching his opinion, Welner reviewed and considered all of the materials available to the prior examiners. But, unlike the prior examiners, Welner considered a substantial amount of additional information including over 60 interviews with witnesses who had observed and interacted with Defendant, including the victim, hospital staff, family members, former co-workers, church leaders, and other friends and acquaintances. Welner's report lists 161 sources of information.

Second, Welner's testimony is the product of reliable principles and methods. In preparing the report, Welner followed traditional, accepted methods used by the psychological community to evaluate competency. His diagnoses were based on the criteria set forth in the DSM-IV-R, which Defendant acknowledges is subject to objective scientific scrutiny and empirical verification. Welner then prepared a report presenting the relevant history, examination findings, diagnostic assessment, and explanation of the reasoning process used to formulate his opinion. This represents the best practices in forensic psychiatry and psychology.

The defense suggests that Welner's report is not based on reliable scientific principles because it strays from the DSM-IV-TR. But a particular diagnosis under the DSM-IV-TR does not necessarily mean that a defendant is or is not competent to stand trial. The DSM-IV-TR has a disclaimer that the categorization of the conditions as mental disorders may not be wholly relevant to legal judgments such as competency. Nonetheless, Welner's report diagnoses Defendant with Pedophilia, Nonexclusive Type; Antisocial Personality Disorder; Narcissistic Personality Disorder; Malingering; and Alcohol Abuse, in Controlled Environment. Each of these diagnoses are based on the diagnostic criteria contained in the DSM-IV-TR.

Defendant specifically argues that psychopathy is a category that has been specifically rejected by the scientific community who put together the DSM-IV and such a diagnosis cannot pass *Daubert* standards. Welner discusses psychopathy in the context of his diagnosis of antisocial personality disorder in a manner consistent with the DSM-IV-TR, which discusses psychopathy under "associated features and disorders" of antisocial personality disorder. The fact that psychopathy is not included as a separate diagnosis in the DSM-IV-TR does not mean that it is not based on valid and reliable scientific principles.

Third, Defendant's disagreement with Welner's assessment of which facts are most significant and what conclusions can be drawn from those facts are a basis for cross-examination as well as argument about the weight to be afforded Welner's opinion. But such disagreements do not reach a level that would question the admissibility of Welner's testimony. Defendant will have a full opportunity to explore any perceived deficiencies in Welner's opinion on cross-examination.

Defendant's contention that Welner failed to fully consider the observations and opinions of Dr. Paul Whitehead is disputed by the government. Dr. Whitehead's role was not to offer an opinion on Defendant's competency. Under Utah law, the role of treatment provider must be entirely separate from the role of competency evaluator. Dr. Whitehead acknowledged at the involuntary medication hearing that "the treatment team doesn't have a formal opinion about [restoration of competency] because it's out of our purview." Dr. Whitehead diagnosed Defendant with delusional disorder for purposes of treatment, and Dr. Welner spends a significant amount of time in his report explaining why, in his professional opinion, the facts of this case do not support such a diagnosis. This disagreement does not provide a basis for excluding Welner's testimony. Rather, the disagreements can be raised and explored in the testimony at the competency hearing.

Finally, in response to Defendant's argument that Welner's claim that his report has been peer reviewed is false, the government argues that Welner's report does not invoke "peer review" as that term is used in *Daubert*. The dispute is one of semantics. The use of the phrase "peer review" may not be apt, but there is no need for the report itself to be peer reviewed in the generally accepted sense. The report employs diagnostic methods that have been peer reviewed.

15

The court concludes there is no basis for the court to find the report less liable or contrary to Rule 702 standards because of the process Welner used in creating his report or his choice of words to describe that process.

Defendant states that his challenges to Welner's report are only examples of the deficiencies in the report and that he believes that those deficiencies as well as others will be addressed by defense counsel during voir dire at the competency hearing. The court, however, must assume that Defendant chose what he thought were the most glaring deficiencies to use as examples. Because the court concludes that none of these challenges provides a basis for questioning the admissibility of Welner's testimony, voir dire is unnecessary. Defendant may raise these attacks and the others to which he refers on cross-examination. The court finds no basis for delaying its ruling regarding the underlying admissibility of Welner's testimony.

## CONCLUSION

Based on the above reasoning, (1) Defendant's Motion to Preclude the Introduction of All Lay Witness Testimony is DENIED with the exception that Defendant may raise specific objections after the government produces a revised witness list and at the competency hearing on a per witness basis; (2) Defendant's Motion to Exclude Writings of Ervil LeBaron and Expert Testimony of Richard Forbes and Daniel Peterson is DENIED; (3) Defendant's Motion to Exclude Testimony of Dr. Michael Welner as Inadmissible Under Rule 702 is DENIED; and (4) Defendant's Second Motion to Compel Evidence is MOOT. Defendant has also filed a Motion to Continue Competency Hearing, which was not argued at the November 9, 2009 hearing, but which the court denies.

The court reminds the parties that the court has set aside ten days for the competency

hearing, which the court views as more than adequate time for the proceeding.  The court can give the matter no additional time.  The parties must keep these time restrictions in mind in preparing their presentations.

    DATED this 16th day of November, 2009.

                                                  _____
                                                  DALE A. KIMBALL
                                                  United States District Judge