CARLIE CHRISTENSEN, United States Attorney (#0633)
FELICE JOHN VITI, Assistant United States Attorney (#7007)
DIANA HAGEN, Assistant United States Attorney (#8205)
DAVID F. BACKMAN, Assistant United States Attorney (#8044)
ALICIA COOK, Special Assistant United States Attorney (#8851)
Attorneys for the United States of America
185 South State Street, #300
Salt Lake City, Utah 84111-1506
Telephone:  (801) 524-5682
Facsimile:  (801) 524-6924
E-mail: Felice.Viti@usdoj.gov

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN DAVID MITCHELL,<br><br>Defendant. | 2:08-CR-00125-DAK<br><br>UNITED STATES' POSITION WITH RESPECT TO SENTENCING FACTORS, MOTION FOR AN UPWARD DEPARTURE AND MEMORANDUM IN SUPPORT OF LIFE SENTENCE UNDER 18 U.S.C. § 3553(a) |

_____

**INTRODUCTION**

The United States, by and through the undersigned Assistant United States

Attorneys, file this Position With Respect to Sentencing Factors, Motion for an Upward

Departure pursuant to U.S.S.G. § 5K2.8, and Memorandum in Support of a Life Sentence

under 18 U.S.C. § 3553(a).  The United States urges this Court to impose a sentence of

life in prison based on the following independent bases:

(1)  In addition to the enhancements already included in the presentence report, the calculation of the defendant's guideline range should include a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1), Vulnerable Victim, and a two-level enhancement pursuant to § 3C1.1, Obstructing or Impeding the Administration of Justice.  The application of these enhancements would result in a total offense level of 43.  Regardless of the defendant's Criminal History Category, an offense level of 43 results in a guideline range of life.

(2)  Additionally, the United States moves this Court for an upward departure of five levels pursuant to U.S.S.G. § 5K2.8, Extreme Conduct.  An increase of five levels would bring the defendant's total offense level to 48.[1]  Significantly, even without the four points attributable to the enhancements listed above and the two points attributable to the leader/organizer enhancement to which the defendant objects,[2] a five-level departure would produce a total offense level of 42, resulting in a guideline range of 360 months to Life.  As a result, a life sentence would be within the advisory guideline range even without the disputed enhancements.

---

[1]  The United States is aware that the highest guideline level set forth in the Sentence Guidelines is 43, and at a level 43, the defendant's sentence guideline range is life, regardless of his Criminal History Category.

[2]  Once the defense files its Position with Respect to Sentencing Factors, the United States will file a separate response addressing the defendant's objection to the leader/organizer enhancement and any other defense objections to the presentence report.

(3)   Finally, the United States asks this Court to make an express finding that, regardless of the ultimate advisory guideline range, it would impose a life sentence pursuant to 18 U.S.C. § 3553(a).  A sentence of life imprisonment is a reasonable sentence taking into consideration all of the factors set forth in 18 U.S.C. § 3553(a).

## POST-*BOOKER* SENTENCING

Since *United States v. Booker*, 543 U.S. 220 (2005), "rendered the Sentencing Guidelines advisory, district courts must use a two-step process at sentencing." *United States v. Hernandez-Castillo*, 449 F.3d 1127, 1129 (10th Cir. 2006).  The Guidelines remain "the starting point and the initial benchmark" for calculating an appropriate sentence.  *Gall v. United States*, 128 S.Ct. 586, 596 (2007).  "In Step 1, the district court must consult the Guidelines and apply any applicable upward adjustments and downward departures."  *Hernandez-Castillo*, 449 F.3d at 1129.  This includes consideration of upward departures under Part K of the guidelines.  *United States v. Calzada-Maravillas*, 443 F.3d 1301, 1305 (10th Cir. 2006) ("Because the Supreme Court required each district court to consult those Guidelines and take them into account when sentencing, a district court's sentencing decision necessarily includes consideration of these Guideline departure provisions.").  "Through that process, the district court establishes a total offense level and corresponding sentencing range under the Guidelines."  *Hernandez-Castillo*, 449 F.3d at 1129.

"In Step 2, the district court may use its discretion to impose a sentence within the Guidelines range or to vary either upward or downward from that range." *Id.* "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 128 S.Ct. at 596. The district judge must make "an individualized assessment based on the facts presented." *Id.* at 597. If the judge decides that a non-guideline sentence is warranted, "he must then consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

## DISCUSSION

### 1.   OBJECTIONS TO THE PRESENTENCE REPORT

In addition to the calculations set forth in the presentence report, this Court should apply the following enhancements: (A) a two-level enhancement because the defendant's abuse rendered Ms. Smart a vulnerable victim to the ongoing offense of kidnapping and the offense of interstate transportation of a minor, and (B) a two-level enhancement for obstruction of justice based on the defendant's efforts to avoid standing trial by creating a false appearance of incompetency. With the addition of these four levels, the defendant's guideline range would be life imprisonment.

### A.      Vulnerable Victim, U.S.S.G. 3A1.1(B)(1)

The United States objects to the non-inclusion of the Vulnerable Victim enhancement in the presentence report.  The enhancement for Vulnerable Victim in U.S.S.G. § 3A1.1(b)(1) should apply because the defendant's treatment of Ms. Smart during her captivity rendered her particularly vulnerable to the continuing offense of kidnapping and the offense of transportation of a minor for sexual purposes.

The 2002 edition[3] of U.S.S.G. § 3A1.1(b)(1) states, "If the defendant knew or should have known that a victim of the offense was a vulnerable victim, increase by two levels."  Application Note 2 of the Commentary states:

> For purposes of subsection (b), "vulnerable victim" means a person (A) who is a victim of the offense of conviction and any conduct for which a defendant is accountable under § 1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct.

U.S.S.G. § 3A1.1 comment. (n.2).  Application Note 2 proscribes the application of the enhancement in those situations where a factor (such as age of the victim) that makes a person a vulnerable victim under the guideline is incorporated in the offense guideline. *Id*.

The vulnerable victim enhancement "should apply when the victim is 'less able to resist than the typical victim,' and 'require[s] greater societal protection.'"  *United States v. Scott*, 529 F.3d 1290, 1300-01 (10th Cir. 2008) (internal citation omitted) (alteration in

---

[3]  The United States has used the 2002 edition of the U.S.S.G. for calculating the defendant's Guideline range.

original) (quoting *United States v. Proffit*, 304 F.3d 1001, 1007 (10th Cir. 2002)).

Importantly, "'it is not a prerequisite that a defendant be aware of the victim's

vulnerability at the time the defendant targets the victim; learning about the vulnerability

during the criminal episode is sufficient.'" *Scott*, 529 F.3d at 1301 (quoting *Proffit*, 304

F.3d at 1006). Application of the enhancement is appropriate where the defendant's own

actions create the victim's vulnerability. *See, e.g., United States v. Dock*, 426 F.3d 269,

272-74 (5th Cir. 2005) (upholding vulnerable victim enhancement in transportation of

illegal aliens case where defendant locked approximately 50 aliens in the trailer of his

semi-truck, drove them for 12 hours in scorching heat, stopped to discover that several of

the aliens were in bad condition, closed the trailer doors and drove another 50 miles,

resulting in the death of two of the aliens).

Kidnapping is a continuing offense. *See United States v. Denny-Shaffer*, 2 F.3d

999, 1018-19 (10th Cir. 1993). Accordingly, the question here is whether the defendant

knew or should have known that Ms. Smart was a vulnerable victim throughout his

continued commission of the kidnapping from June 5, 2002, until March 12, 2003. *See*

*Scott*, 529 F.3d at 1301. As the following shows, he obviously did.

The defendant knew Ms. Smart was particularly vulnerable to his crimes because

of the unusually heinous, cruel, brutal, degrading and humiliating abuse to which he

subjected her. The defendant rendered her vulnerable by intentionally creating a climate

of fear for her own safety and that of her family. When he first abducted her, he held a

6

knife to her throat and threatened to kill her and her family.  Throughout her captivity, he

continually threatened to kill her and her family if she tried to escape, and he even

showed her the knife he used to kidnap her and recited the exact threats he made to her

when he was in her bedroom.

In addition, the defendant subjected Ms. Smart to unrelenting sexual abuse that

rendered her more vulnerable to the continuing crime of kidnapping and the crime of

transportation of a minor.  Upon reaching camp, he immediately raped her.  For the first

month and a half, he inhumanely tethered her to a cable and continued to rape her while

she was tethered.  The rapes, often several of them a day, continued throughout the

kidnapping.  "Victims of [prior] molestation and sexual assault certainly qualify as

vulnerable victims . . . ."  *United States v. Beith*, 407 F.3d 881, 891 (7th Cir. 2005) (citing

*United States v. Snyder*, 189 F.3d 640, 649 (7th Cir. 1999) (victim had a prior history of

molestation); *United States v. Newman*, 965 F.2d 206, 211 (7th Cir. 1992) (20-year-old

victim was raped at age 15); *United States v. White*, 979 F.2d 539, 544 (7th Cir. 1992)

(victim lived in group home and had a prior history of sexual abuse)); *see also United

States v. Redhouse*, Nos. 89-10565 & 89-10570, 1990 WL 159529, *6 (9th Cir. 1990)

(unpublished) (upholding enhancement based on several facts including that victim was

gang-raped by same defendants on two separate occasions, finding "[t]he effects of the

first series of attacks made her more vulnerable to the second series").  He also forced

her to walk around the Utah camp naked, watch him and Wanda Barzee engage in sexual

intercourse and oral sex, forced her to perform oral sex on him, view pornography (Hustler magazine), drink hard alcohol, and smoke marijuana and cigarettes. *See United States v. Bell*, 367 F.3d 452, 470-71 (5th Cir. 2004) (upholding enhancement based on several facts including that defendant had humiliated victim on previous occasions by pulling his pants down and shaving his eyebrows and that on this occasion he forced victim to drink alcohol and hit him in the head prior to raping him).

Defendant further rendered Ms. Smart vulnerable by isolating her in strange and unfamiliar surroundings, forcing her to assume a new identity, and making her totally reliant on him. The defendant stripped Ms. Smart of her name and all her physical possessions that served as links to her family and prior life. The defendant forced her to burn her favorite red pajamas, the pajamas she was wearing when he abducted her, threw away her tennis shoes and even the pin she used to close the collar of her red pajamas out of modesty. The defendant forced her to refer to her parents by their first names. He rendered her completely dependent on him for food and shelter, often times leaving her hungry and exposed to the elements. *See United States v. Lambright*, 320 F.3d 517 (5th Cir. 2003) (upholding enhancement where inmate who was assaulted and killed by a prison guard was completely dependent on the care of the prison guards, was locked in his cell prior to the assault, and could not protect himself from the assault).

Based on these and other forms of persistent abuse, the defendant knew that Ms. Smart was especially vulnerable to his continued kidnapping of her and the crime of

interstate transportation of a minor, which was committed when the defendant transported Ms. Smart to California in early October 2002.  Therefore, this Court should find that the defendant knew or should have known that Ms. Smart was a vulnerable victim in that she was less able to resist the continuing (nine month) crime of kidnapping and the crime of interstate transportation of a minor than the typical victim and required greater societal protection.  This Court should apply the vulnerable victim enhancement.

### B.        Obstruction of Justice, U.S.S.G. § 3C1.1

The United States objects to the presentence report's omission of the enhancement for obstruction of justice.  This Court should apply a two-level enhancement for obstructing or impeding the administration of justice based on defendant's purposeful conduct designed to create the false impression that he was incompetent to stand trial. Under U.S.S.G. § 3C1.1, a two-level enhancement is appropriate if "(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense."  In this case, defendant obstructed his prosecution for the offenses of conviction (and for the closely related state charges) by feigning a fixed religious delusion and the inability to control his behavior to create the appearance of incompetence.

9

At least three Circuits have held that the obstruction enhancement is appropriate where a defendant malingers or feigns mental illness in order to avoid standing trial.  *See United States v. Greer*, 158 F.3d 228, 237-38 (5th Cir. 1998); *United States v. Patti*, 337 F.3d 1317, 1325 (11th Cir. 2003); *United States v. Batista*, 483 F.3d 193, 197-98 (3rd Cir. 2007).  While "the commentary to § 3C1.1 does not explicitly refer to the act of feigning incompetence in order to avoid trial, conviction, or sentencing . . . such malingering is more like the types of conduct to which § 3C1.1 applies than those to which it does not." *Greer*, 158 F.3d at 235.  Like the class of conduct to which the enhancement applies, "feigning incompetency in order to avoid trial and punishment" involves "egregiously wrongful behavior whose execution requires a significant amount of planning and presents an inherently high risk that justice will in fact be obstructed." *Id.*   As the Fifth Circuit explained:

> Putting on the pretense of incompetency demands not only dramatic ability but planning and resolve. Unlike providing false identification at arrest and avoiding arrest altogether, it is not the result of a spur of the moment decision. Nor can it stem from merely panic, confusion, or mistake. And, of course, a criminal defendant's sanity is always material: If he succeeds at convincing the court of his incompetency, he does not only increase his chances of acquittal, as he would if he committed perjury or falsified a record; he makes it impossible even to try him. Thus, it appears, from an analysis of the text of the Guidelines Manual alone, that § 3C1.1 applies to the act of feigning incompetency.

*Id.*

The application of the enhancement in such circumstances does not unconstitutionally chill the defendant's right to seek a competency hearing. *See Batista*, 483 F.3d at 198; *Patti*, 337 F.3d at 1325; *Greer*, 158 F.3d at 237. The application notes to U.S.S.G. § 3C1.1 make clear that the enhancement "is not intended to punish a defendant for the exercise of a constitutional right," U.S.S.G. § 3C1.1, comment. (n.2) (2002), and "the Due Process Clause prevents a defendant from standing trial if that defendant is mentally incompetent." *Batista*, 483 F.3d at 197. "However, these two facts do not combine to prevent the imposition of an enhancement on a defendant who feigns mental illness in order to avoid going to trial." *Id.* Just as "a defendant's right to testify does not include a right to commit perjury," *United States v. Dunnigan*, 507 U.S. 87, 96 (1993), a defendant's right to a competency hearing does not include the right to mislead evaluators and the courts in order to secure a finding of incompetency. *See Greer*, 158 F.3d at 237 ("While a criminal defendant possesses a constitutional right to a competency hearing if a bona fide doubt exists as to his competency, he surely does not have the right to create a doubt as to his competency or to increase the chances that he will be found incompetent by feigning mental illness.").

There is no question that "§ 3C1.1 cannot be used to enhance the sentence of a defendant simply because he or his attorney requests competency hearings" and the defendant is later found to be competent. *Greer*, 158 F.3d at 237; *see also Batista*, 483

11

F.3d at 198.  As in the perjury context, the application of the enhancement must be

supported by specific findings.  *Greer*, 158 F.3d at 237.

> If the defendant is found competent, and the court later
> determines that he feigned incompetency in order to delay or
> avoid his day of reckoning, it will apply the enhancement.  If
> the court finds, however, that the defendant did not feign
> incompetency but that there was simply a bona fide doubt
> about his mental health that did not rise to the level of
> incompetency, then it may not increase the sentence.

*Greer*, 158 F.3d at 238.  The application of the enhancement "requires not only that the

defendant commit affirmative acts that tend to create an appearance of incompetency, but

that he do so with the specific intent of obstructing justice."  *Greer*, 158 F.3d at 241.

In *Greer*, the Fifth Circuit upheld the application of the enhancement even though

the defendant had a history of psychiatric problems and suffered from various personality

disorders.  The court noted that, "[e]specially where a defendant has a history of bizarre

behavior and questionable competency, the district court must closely scrutinize the

record to ensure that the basis for the obstruction enhancement is the sort of calculated

attempt to derail justice that evidences a desire to avoid the authority of the court or to

escape the commands of the law."  *Greer*, 158 F.3d at 239.  There, the enhancement was

supported by "evidence that Greer engaged in a sustained pattern of appearing

considerably more impaired than he was, and when he was told that certain actions would

not convince the experts that he was in fact insane, he modified his behavior."  *Id.* at 241.

The Fifth Circuit held that the "district court did not clearly err in finding that Greer

12

willfully feigned mental illness in a conscious and deliberate effort to delay, and perhaps avoid altogether, his day of reckoning on the grave offenses with which he was charged." *Id.*

In this case, this Court has already made sufficient findings to support the application of the obstruction of justice enhancement.  In its memorandum decision on competency, this Court found that defendant's conduct was purposeful and done with the intent to thwart a finding of competency.

After being arrested for the instant offenses, defendant successfully avoided trial for seven years by strategically presenting his "prophet persona" in settings where his competency was under scrutiny.  As this Court found, "Mitchell presents himself as preoccupied with extreme religious themes when he is being evaluated," but "his behavior during his three years of observation at the Utah State Hospital 'exhibits the antithesis of being preoccupied with religion, let alone religious ideas of a pathological nature.'"  (Competency Order at 101 (internal citations omitted).)  This Court made the following specific findings regarding the purposeful nature of this behavior:

> The United States presented convincing evidence and expert testimony that the religious persona that Mitchell displays in court and to evaluators is designed to derail his criminal proceedings. Mitchell has accurately read and exploited the vulnerability in the system, which protects mentally incompetent defendants from standing trial. "All he had to do was to strategically present his prophetic persona in places like the courtroom and at the US Medical Center for federal prisoners in Springfield, Missouri, or at any other time he thought he might be under evaluation regarding his mental

13

> state or competence." In so doing, Mitchell has been
> effective in stalling the progress of his legal case for nearly
> seven years.

(Competency Order at 97 (internal citations omitted).)

Similarly, defendant's theatrics in court were intended to create the appearance of incompetency. This Court specifically found that "Mitchell's singing in court is a contrivance to derail the proceedings and create the false impression that he is unable to control his behavior." (Competency Order at 146.) "Mitchell had never behaved inappropriately in court" until he was unable to reach a plea agreement with the state. (Competency Order at 57.) This Court found that the "abrupt change in Mitchell's courtroom behavior after [state] plea negotiations broke down shows that the behavior is 'contrived' and 'theatrical.'" (Competency Order 147-48.) Like Mitchell's strategic display of his "prophet persona," this Court found that Mitchell's singing in court was intended to obstruct his prosecution:

> As Mitchell has admitted, he purposefully sings in court to
> disrupt the process. Dr. Welner correctly concluded that
> "Mitchell made the decision that he needed to derail the
> process because the plea option was unacceptable to him."
> He has stated that he will be found guilty if he goes to trial.
> He understood that he "was approaching trial with evidence
> very much stacked against him with a sentence that he was
> facing to be quite significant so there would be no incentive
> for him to go to trial and every incentive to derail the
> process." "Brian Mitchell stopped this train in 2004 because
> he was confronting a situation that was very much not in his
> interest and there was no incentive for him to continue with
> the trial process, and this is what he figured to do."

14

(Competency Order at 149 (internal citations omitted).)

By willfully stalling his trial for more than seven years, defendant delayed justice and closure to the victim and her family, wasted substantial state and federal resources, and denied the public a speedy trial.  This Court found that the "evidence demonstrates a pattern of activity suggesting that Mitchell has done everything possible to delay and avoid trial."  (Order at 140.)  Engaging in such volitional conduct fully supports the application of obstruction of justice enhancement.  Only by applying the enhancement in this case will defendant's sentence take into account his obstructive conduct.

## 2.    UPWARD DEPARTURE MOTION, U.S.S.G. § 5K2.8 EXTREME CONDUCT

The United States moves this Court for an upward departure of five levels pursuant to U.S.S.G. § 5K2.8, Extreme Conduct.  U.S.S.G. § 5K2.8, Extreme Conduct, reads as follows:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the guideline range to reflect the nature of the conduct.  Examples of extreme conduct include torture of the victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

It is well-settled that the departure provisions of the Sentence Guidelines are applicable, post-*Booker*, and the Tenth Circuit has directed that district courts apply them when appropriate.  *United States v. Robertson*, 568 F.3d 1203, 1210 (10th Cir. 2009);  *see also United States v. Sierra-Castillo*, 405 F.3d 932, 936 n.2 (10th Cir. 2008) ("Although district courts post-*Booker* have discretion to assign sentences outside of the Guidelines-

authorized range, they should also continue to apply the Guidelines departure provisions in appropriate cases.").

Departures from the recommended Guideline range are reviewed and scrutinized according to pre-*Booker* cases. *See Robertson*, 568 F.3d at 1211; *see also United States v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008) ("Although *Koon* was decided when the Guidelines were still mandatory, neither *Booker* nor any of the subsequent cases have altered the standard for when to depart from the recommended range."). Therefore, even post-*Booker*, the issue of whether departures are appropriate is analyzed and resolved using the following four-part test:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the court remove the defendant from the applicable Guideline heartland thus warranting a departure; (3) whether the record sufficiently supports the factual basis underlying the departure; and (4) whether the degree of departure is reasonable.

*United States v. Begaye*, 645 F.3d 456, 462 (10th Cir. 2011) (quotation and citation omitted)*; United States v. Munoz-Tello*, 531 F.3d 1174, 1186 (10th Cir. 2008) (quoting *United States v. Wolfe*, 435 F.3d 1289, 1295 (10th Cir. 2006)). An analysis of each prong of the four-part test amply demonstrates that a five-level upward departure is warranted.

> (1)    The Factual Circumstances Supporting a Departure
>        Are Permissible Departure Factors.

A defendant's Extreme Conduct, as defined in U.S.S.G. § 5K2.8, during the commission of the offense, is an encouraged departure factor. *United States v. Neal,* 249

16

F.3d 1251, 1256  n.5 (10th Cir. 2001).  A sentencing court is authorized to depart for

encouraged factors as long as the Guidelines do not already take them into account.

*United States v. Jose-Gonzalez*, 291 F.3d 697, 702 (10th Cir. 2002) (citing *Koon v. United

States*, 518 U.S. 81, 96 (1996)).  If an encouraged factor for departure has already been

taken into account by the applicable guideline, it is a permissible basis for departure only

when present to an exceptional degree. *Koon*, 518 U.S. at 96.

   The fact that the victim was raped and otherwise sexually abused on **numerous

occasions** during her nine-month captivity has not been taken into account by the

Guidelines, and therefore, is a permissible departure factor.[4]  The Tenth Circuit, in *United

States v. Begaye*, 635 F.3d 456, 469 (10th Cir. 2011), recently held that sexual abuse on a

regular basis for a number of years justified an upward departure pursuant to § 5K2.8.

   In *Begaye*, the defendant was convicted of Aggravated Sexual Abuse Within

Indian Country.  *Id.* at 458.  The district court departed upward pursuant to U.S.S.G.

§§ 5K2.3 and 5K2.8.  In affirming the § 5K2.8 departure, the Court held:

> Mr. Begaye engaged in an extended campaign of abuse
> wherein he sexually assaulted his daughter on a regular basis
> for a number of years.  The victimization of [the victim] was
> both prolonged and unrelenting.  The district court found as
> much, and Mr. Begaye does not now challenge that finding on
> appeal.  In this circuit, "an upward departure may be

_____

   [4]  While the fact that Ms. Smart was subjected to Aggravated Sexual Abuse as defined in
18 U.S.C. § 2241(a) has been taken into account in the defendant's guideline calculation, the
number of times she was subjected to such abuse has not been taken into account.  Alternatively,
this factor, although taken into account, is present to an exceptional degree due to the repetitive
nature of the conduct.

17

> supportable on the basis of [a defendant's] multiple sexual
> contacts with the same victim."...We believe that "[t]he
> repeated sexual assault of [a victim] is precisely the sort of
> 'extreme conduct' contemplated by § 5K2.8."

*Id*. at 469 (quoting *United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir. 1990)).  *See also United States v. Barragan-Espinoza*, 350 F.3d 978, 983 (9th Cir. 2003) ("[T]he repeated sexual assault of [a victim] is precisely the sort of 'extreme conduct' contemplated by § 5K2.8."); *United States v. Chatlin*, 51 F.3d 869, 873 (9th Cir. 1994) ("While repetitive conduct is not specifically mentioned in the guidelines, it is an accepted basis for an upward departure."); *United States v. Anderson*, 5 F.3d 795, 803-05 (5th Cir. 1993) (finding no abuse of discretion where district court departed upward pursuant to § 5K2.8 based on the "number and nature of the repeated sexual abuses imposed upon the victim" where defendant convicted of kidnapping and raped the victim a number of times, subjected victim to anal sex, and forced victim to perform oral during the course of the two day kidnapping); *United States v. Claymore*, 978 F.2d 421, 424-25 (8th Cir. 1992) (affirming upward departure where defendant charged with one sexual act but raped victim several times during a three month period).

Ms. Smart testified that the defendant raped and otherwise sexually abused her on a daily basis, sometimes multiple times a day, throughout the nine-month commission of the offense.  This repeated and unrelenting sexual abuse over such a prolonged period of time is the type of extreme conduct to which U.S.S.G. § 5K2.8 applies.  *See Begaye*, 635 F.3d at 469.

18

The **nature** or **type** of the sexual abuse imposed upon the victim has not been taken into consideration by the Guidelines and is therefore a permissible departure factor that may justify a finding of extreme conduct. *See Anderson*, 5 F.3d at 803-05 (finding no abuse of discretion where district court departed upward pursuant to § 5K2.8 based on the "number and nature of the repeated sexual abuses imposed upon the victim" where defendant convicted of kidnapping and raped the victim a number of times, subjected victim to anal sex, and forced victim to perform oral during the course of the two day kidnapping); *see also United States v. Ellis*, 935 F.2d 385, 386-87, 396 (1st Cir. 1991) (holding that "particularly degrading and insulting forms" of sexual abuse, including fellatio, cunnilingus, and digital penetration committed by a defendant convicted of knowingly transporting an individual under eighteen in interstate commerce to engage in illegal sexual activity warranted a departure pursuant to § 5K2.8).

In this case, Ms. Smart was forced to orally sodomize the defendant, which was a "particularly degrading and insulting" form of sexual abuse. *Ellis*, 935 F.2d at 396. She was also forced to watch the defendant and Wanda Barzee engage in sexual intercourse and oral sodomy and was forced to view hardcore pornography. She was forced to walk naked about the camp in which she was held captive. This sexual abuse was unusually cruel, degrading and humiliating, and is extreme conduct that should be recognized under U.S.S.G. § 5K2.8.

Repeated threats directed toward the victim have not been taken into consideration by the Guidelines and are therefore permissible departure factors which may justify a finding of extreme conduct.[5]  *See United States v. Johnson*, Nos. 06-70748 & 06-7075, 2007 WL 2891033, *8 (10th Cir. Oct.3, 2007) (unpublished) (finding multiple threats of death appropriate basis for upward departure for defendants convicted of bank robbery); *see also United States v. Gary*, 18 F.3d 1123, 1130 (4th Cir. 1994) (affirming § 5K2.8 departure where the "extended nature" of the defendant's physical and sexual threats toward the victim prolonged her pain and humiliation); *United States v. Pergola*, 930 F.2d 216, 219 (2d Cir. 1991) (repeated unlawful threats by defendant against victim justified upward departure pursuant to U.S.S.G. § 5K2.8).

Here, the defendant repeatedly threatened to kill Ms. Smart or her family while she was held captive.  These repeated threats, which created a climate of fear and kept Ms. Smart in fear throughout her ordeal, are not adequately taken into account by the Guidelines and further support an upward departure.  *See Gary*, 18 F.3d at 1130; *Pergola*, 930 F.2d at 219.

Finally, the defendant's inhumane treatment of Ms. Smart has not been taken into account by the Guidelines.  The defendant kept Ms. Smart tethered by a cable attached to

---

[5] Since the defendant was subject to the specific offense characteristic that the offense was committed by means set forth in 18 U.S.C. § 2241(a) or (b), threat of death has been taken into account by the guideline calculation.  However, the repetitive nature of the threats has not been taken into account.  Alternatively, this factor, although taken into account, is present to an exceptional degree due to the repetitive nature of the threats.

her ankle for approximately six weeks.  He isolated her and forced her to live a homeless

lifestyle, exposed to the elements and often hungry, and forced her to ingest substances

that made her physically ill.  He subjected her to psychological abuse, by attempting to

erase her identity and by forcing her to engage in conduct she found repulsive.  This

extreme conduct further supports an upward departure under U.S.S.G. § 5K2.8.

> (2)   *Whether the Departure Factors Relied Upon by the*
> *Court Remove the Defendant From the Applicable*
> *Guideline Heartland Thus Warranting a Departure.*

The departure factors and factual circumstances described above do remove the

defendant from the applicable guideline heartland, thereby warranting a departure.  This

Court is "to treat each guideline as carving out a 'heartland,' a set of typical cases

embodying the conduct that each guideline describes.  When a court finds an atypical

case, one to which a particular guideline linguistically applies but where conduct

significantly differs from the norm, the court may consider whether a departure is

warranted."  U.S.S.G., Ch. 1, Pt. A, intro. comment. 4(b).

Whether the factual circumstances of a case make it atypical or outside the

heartland is a largely factual inquiry, and review of such inquiry is "at its most

deferential."  *United States v. Collins*, 122 F.3d 1297, 1302 (10th Cir. 1997).  "District

courts have an institutional advantage over appellate courts in making these sort of

determinations, especially as they see many more Guidelines cases than appellate courts

do."  *Koon v. United States*, 518 U.S. 81, 98 (1996).

A case that closely factually resembles the instant matter is *United States v. Anderson*, 5 F.3d 795 (5th Cir. 1993). In *Anderson*, the defendants were convicted of kidnapping. *Id.* at 796. During the two day kidnapping, the defendants raped the 29 year old victim, subjected her to anal sex, ordered her to perform oral sex, threatened to kill her, told her about other people they had killed or planned to kill, and told the victim they would burn her body. *Id.* at 797. In upholding the district court's upward departure pursuant to U.S.S.G. § 5K2.8, the Fifth Circuit stated:

> The events in question provide such an example of unusually heinous and degrading conduct. Over the course of two days, [the victim] was repeatedly raped and forced to engage in oral and anal sex, which is unusually cruel and degrading. The defendants threatened to kill her and described to her, not only tales of others they had killed, but also what they would do with her to destroy any evidence. The district court clearly did not abuse its discretion in determining that the defendants had exhibited unusually heinous and degrading conduct under section 5K2.8, p.s.

*Id.* at 805.

In *Anderson*, the Fifth Circuit found that the defendants subjected the 29-year-old victim to extreme conduct over the course of two days. The factual circumstances described in *Anderson* were held to be atypical, outside the heartland of kidnappings, thereby warranting departure. The factual circumstances in the instant matter are well beyond those in *Anderson*. Unlike the victim in *Anderson,* Ms. Smart was not an adult. She was 14 and 15 years old during the period of captivity. Ms. Smart was subjected to similar sexual abuse and death threats as was the victim in *Anderson*. However, Ms.

22

Smart was subjected to additional unusually heinous, cruel, brutal, degrading and humiliating treatment to that suffered by the *Anderson* victim.  Moreover, unlike the *Anderson* victim, Ms. Smart was not held and subjected to unusually heinous, cruel, brutal, degrading and humiliating treatment for "only" two days – she was held for nine months or approximately 270 days.

Based on the facts of this case, and the cases cited above, this Court would be well within its discretion in determining that defendant's conduct fell outside the heartland of kidnappings and interstate transportation of minor cases.

> (3)     *Whether the Record Sufficiently Supports the Factual Basis Underlying the Departure.*

The evidence admitted during trial, the uncontested facts contained in the presentence report, and any other evidence which may be admitted during the sentencing hearing will sufficiently support the factual basis underlying a departure pursuant to U.S.S.G. § 5K2.8.

> (4)     *Whether the Degree of Departure is Reasonable.*

The final departure factor is the requirement that this court's degree of departure is reasonable.  *United States v. Proffit*, 304 F.3d 1001, 1012 (10th Cir. 2002).  "Articulation of the factual basis for upwardly departing 'does not automatically suffice to explain the degree of departure.'"  *United States v. Walker*, 284 F.3d 1169, 1172 (10th Cir. 2002) (quoting *United States v. Whiteskunk,* 162 F.3d 1244, 1253 (10th Cir. 1998)).  *See also United States v. Flinn*, 987 F.2d 1497, 1502 (10th Cir. 1993) (finding that merely

23

restating the justification for departure "does not fulfill the separate requirement of stating the reasons for imposing the particular sentence").  In applying a departure, this Court must carefully explain its reasoning and analysis regarding why it chose a particular degree of departure.  *United States v. Bartsma,* 198 F.3d 1191, 1197 (10th Cir. 1999). This explanation and analysis must provide a "reasonable indicia that the sentence [this court pronounces] is proportional to the crime committed."  *United States v. Kalady*, 941 F.2d 1090, 1101 (10th Cir. 1991).  This Court will accomplish this task by using any "reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure."  *United States v. Harris*, 907 F.2d 121, 124 (10th Cir.1990).  *See also United States v. Collins*, 122 F.3d 1297, 1309 (10th Cir. 1997) ("The district court may use any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure, which includes using extrapolation from or analogy to the Guidelines.").

A five-level departure is reasonable and based upon a reasonable methodology hitched to the Sentencing Guideline, which accomplishes the goal of ensuring that the departure is reasonable and the sentence is proportional to the crime.  A five level departure is reasonable based upon an analysis of U.S.S.G. §§ 3D1.1-3D1.4, the rules for determining a sentence involving multiple counts of conviction  (hereinafter "grouping") as applied to the facts of this case.

The Sentencing Guidelines procedure for determining the offense level on multiple counts of conviction is as follows: (1) group the counts of conviction into distinct groups of closely related counts pursuant to § 3D1.2; (2) determine the offense level applicable to each group pursuant to § 3D1.3; and (3) determine the combined offense level pursuant to § 3D1.4.  The maximum increase to the offense level which could result pursuant to the grouping rules is five levels.  U.S.S.G. § 3D1.4.

In the instant matter, Ms. Smart was raped and otherwise sexually abused on a daily basis from June 5, 2002 until March 12, 2003.  As she testified, she was forcibly raped on the morning of June 5, 2002, until the morning of March 12, 2003, sometimes multiple times a day.  She was also forced to engage in oral sex with the defendant. Therefore, as noted in the presentence report, the defendant committed the crimes of Aggravated Sexual Abuse, a violation of 18 U.S.C. § 2241(a), on a daily basis.

Viewing each of these acts as separate counts or "pseudo-counts" of 18 U.S.C. § 2241(a), they would **not** group into one group.  *See United States v. Jose-Gonzalez*, 291 F.3d 697, 705 (10th Cir. 2002) (upholding upward departure for defendant convicted of transporting illegal aliens where district court treated the transportation of each killed and seriously injured illegal alien as a separate "pseudo-count" and treated such count as a separate group, and then determined the offense level under U.S.S.G. § 3D1.4).

This very issue, in the context of repetitive and prolonged sexual abuse, was addressed by the Tenth Circuit in *United States v. Big Medicine*, 73 F.3d 994 (10th Cir.

25

1995).  In *Big Medicine*, the defendant was convicted of one count of sexual abuse of a

minor.  *Id*. at 995.  The Tenth Circuit remanded the case to the district court with

instructions to vacate the sentence since the district court considered the age of the victim

to justify an upward departure.  *Id.* at 998.  However, in response to the defendant's

contention that the district court's inclusion of two dismissed counts of sexual misconduct

with seventy-five acts of such misconduct to which defendant admitted, the Court stated:

> [T]he inclusion of the two dismissed counts did not make a
> difference in the multi-count analysis.  Because acts of
> criminal sexual abuse are excluded from being grouped
> together under the multi-count analysis, each act counts
> separately as one unit.  *See* § 3D1.2 commentary application
> note 4, ex. 5 (rape of same victim **on separate days** not
> subject to grouping.)  For anything more than five units, the
> increase is five levels.

*Id*. at 997 (emphasis added).  *See also United States v. Loh*, 417 F.3d 710, 712-13 (7th

Cir. 2005) (holding that separate acts of sexual misconduct occurring with same minor on

different days did not involve substantially the same harm and therefore, defendant was

not entitled to have his multiple acts of sexual misconduct grouped together for

sentencing purposes); *United States v. Vasquez*, 389 F.3d 65, 76-77 (2d Cir. 2004)

(holding that multiple instances of non-forcible, sexual misconduct with the same victim

on different occasions are not subject to grouping); *United States v. Griswold*, 57 F.3d

291, 296 (3d Cir. 1995) (noting that multiple counts of rape involving the same victim are

not to be grouped together under the Guidelines); *United States v. Sneezer*, 983 F.2d 920,

925 (9th Cir. 1992) (holding that two instances of aggravated sexual abuse committed

26

within minutes of one another against the same victim should have been grouped but agreeing that U.S.S.G. § 3D1.2 comment., (n.4) persuades that two rapes committed against the same person on different days would not be grouped).

Ms. Smart was subjected to the same crime of Aggravated Sexual Abuse, a violation of 18 U.S.C. § 2241(a), a number of times, too numerous to count, but certainly more than five. These acts were separated by days. Therefore, they would not be grouped for purposes of U.S.S.G. §§ 3D1.1-3D1.4. Given the number of acts of Aggravated Sexual Abuse committed by the defendant, none of which would group, he would have faced a five-level guideline range enhancement if he had been convicted of multiple counts of Aggravated Sexual Abuse. U.S.S.G. § 3D1.4.

A five-level upward departure for Extreme Conduct, U.S.S.G. § 5K2.8, as justified above, would ensure that the degree of departure is reasonable since it employs a "reasonable methodology hitched to the Sentencing Guidelines ... which includes using extrapolation from or analogy to the Guidelines." *Collins*, 122 F.3d at 1309.[6]

---

[6] In focusing on the defendant's commission of a number of acts of Aggravated Sexual Abuse in its reasonableness of the degree of departure analysis, the United States is not asking this Court to ignore the defendant's other behavior which makes his conduct unusually heinous, cruel, brutal, or degrading. The United States submits that this other conduct would be accounted for in the five-level departure, and the reasonableness of the degree of departure need not be analyzed beyond the non-grouping of the numerous acts of Aggravated Sexual Abuse committed by the defendant over nine months.

### 3.    A LIFE SENTENCE IS REASONABLE IN LIGHT OF THE § 3553(A) FACTORS

The United States also asks this Court to find that a life sentence is reasonable and appropriate irrespective of the Guideline range.  A sentence of imprisonment of life is a reasonable sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a).

"After considering the correct Guidelines range, the district court must then consider all of the § 3553(a) factors to determine the appropriate sentence.  The district court 'must make an individualized assessment based on the facts presented.'" *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting *Gall v. United States,* 128 S.Ct. 586, 597 (2007)).  A district court has "broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range."  *United States v. Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009).

In sentencing a defendant, the district court must "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  *Gall,* 128 S.Ct. at 597.  However, it is "quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence."  The court need not "recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005).

When the sentence falls within the guideline range, the court is required only to provide a general statement of the reasons for its imposition of the particular sentence. *United States v. McComb*, 519 F.3d 1049, 1054 (10th Cir. 2007); *see also* 18 U.S.C. § 3553(c). In such situation, a lengthy explanation is not required because it is evident that the court has adopted the Sentencing Commission's determination regarding the appropriate sentence in that particular case. *Rita v. United States,* 127 S.Ct. 2456, 2468-69 (2007) (holding that findings were sufficient where court merely listened to the arguments and concluded that the guideline sentence was "appropriate"). If the district court determines that a sentence outside the Guidelines is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 128 S.Ct. at 594. A "district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with justifications." *Id.*

When a "district court decides to vary from the Guideline sentencing range after a careful, reasoned, and reasonable consideration of the § 3553(a) factors," the Tenth Circuit will not find an abuse of discretion. *Yanez-Rodriguez*, 555 F.3d at 949.

A life sentence is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3553(a) provides, in part, that the court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed-
> (A) to reflect the seriousness of the offense, to promote
> respect for the law, and to provide just punishment for the
> offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant;
> (D) to provide the defendant with needed educational or
> vocational training, medical care, or other correctional
> treatment in the most effective manner;
> (3) the kinds of treatment available; ...
> (6) the need to avoid unwarranted sentence disparities among
> defendants with similar records who have been found guilty
> of similar conduct; and
> (7) the need to provide restitution to any victims of the
> offense.

The United States will address some of the more salient § 3553 (a) factors.

## A.    The Nature and Circumstances of the Offense

The nature and circumstances of the defendant's crimes alone warrant a life sentence.

In the early morning hours of June 5, 2002, this defendant, after careful planning and premeditation, entered Ms. Smart's bedroom, where she was sleeping with her sister. At that time, Ms. Smart was only 14 years old, still prepubescent, and had not yet started dating boys.  Pointing a knife to Ms. Smart's neck and threatening to kill her and her family, the defendant forced her to a remote mountain campsite, which had been carefully prepared for her arrival and captivity.  She was raped by the defendant.  Shortly thereafter, a cable was attached to her ankle.  The other end of that cable was attached to another cable which was strung between two trees.  For the next six weeks, Ms. Smart

30

was tethered to that cable running between those trees.  She was forced to walk around the campsite naked. The only time she was released from that tree cable was to obtain water and bathe.  For six weeks, she slept, ate, performed chores around the camp while tethered.  She was raped on a daily basis while tethered.  After six weeks, the cable was removed from Ms. Smart's ankle.

In early July, after having been forced to watch the defendant and Wanda Barzee engage in sexual intercourse and oral sex, Ms. Smart was forced to engage in oral sex. Ms. Smart was forced to drink alcohol and smoke marijuana and cigarettes.  The defendant threatened to kill her and her family if she attempted an escape.  In the latter part of July, in an effort to mentally and emotionally separate Ms. Smart from her past life with the family she loved and who loved her, the defendant presented her with a cruel choice – she could either cut or burn her favorite red pajamas, the pajamas she was wearing when she was kidnapped.  She chose to burn them since she could not bring herself to actively destroy such an important connection to her past life.  The defendant also threw away her tennis shoes and the pin that she used, out of modesty, to keep the collar of her red pajamas closed.

When the defendant finally allowed Ms. Smart to accompany him and Wanda Barzee into Salt Lake City, he forced her to wear a robe which covered her from head to toe, a headdress, and eventually, a veil that covered her entire face.

31

In early October 2002, the defendant forced Ms. Smart to a small town near San Diego, California.  At the two campsites in which she was forced to live, Ms. Smart was raped, forced to engage in oral sex, and forced to view pornography.  During a one-week period during which the defendant was arrested, Ms. Smart had nothing to eat or drink except for the rain water she was able to collect in a tarp.  When the defendant returned to the campsite, he raped Ms. Smart while she was in a weakened state caused by this lack of nourishment.

For nine months, the defendant subjected Ms. Smart to cruel sexual, emotional and psychological abuse.  For nine months, Ms. Smart, a young teenager, was subjected to unusually heinous, cruel, brutal, and degrading treatment at the hands of the defendant, which caused great emotional, physical and psychological pain and humiliation.  For nine months, Ms. Smart was isolated and held captive at remote campsites, with inadequate sanitation, food and care.  For nine months, Ms. Smart was separated from the love, warmth and support of her mother and father, her siblings, her grandparents, her aunts and uncles, her cousins, and her friends.  For nine months, Ms. Smart's mother and father were denied the company of their daughter, her siblings were denied the company of their sister, her grandparents were denied the company of their granddaughter, her aunts and uncles denied the company of their niece, her cousins denied the company of their cousin, and her friends denied the company of their friend.  Those nine months can never be recovered.

32

18 U.S.C. § 1201, Kidnapping, carries a maximum term of life imprisonment.[7]  A life sentence is not limited to only those circumstances where the kidnapping results in the death of the victim.  Therefore, the statute contemplates a life sentence in certain circumstances where the victim survives.  The kidnapping of Elizabeth Smart by the defendant is just that circumstance.

### B.    The History and Characteristics of the Defendant

This Court has abundant evidence before it to assess the history and character of this defendant, dating back to the defendant's childhood.  The evidence presented at the competency hearing and at the trial established, by a preponderance of the evidence, that the defendant has engaged in a pattern of sexual abuse against young girls, which culminated in the kidnapping of Ms. Smart.  The evidence also established that the defendant is a psychopath and a malignant narcissist with extreme anti-social tendencies. (*See* Competency Order at 126 ("Mitchell readily meets the definition of a malignant narcissist") and 133 (Mitchell's qualities "support the conclusion that Mitchell is not psychotic but a psychopath")).  The defendant's history and character make clear that he is a danger to the community, and therefore, in order to protect the community, he should be sentenced to a term of life imprisonment.

---

[7]  If death results, the maximum penalty is death.

### C. Need for Sentence to Adequately Reflect the Seriousness of the Offense

For the reasons set forth above in Section A, a life sentence will adequately reflect the seriousness of this particular kidnapping.

### D. Need for Sentence to Promote Respect for the Law

For the reasons set forth above in Section A, a life sentence will adequately promote respect for the law. The message that anyone who engages in such unusually heinous and cruel conduct as the defendant will spend the rest of his life in prison will promote respect for the law.

### E. Need to Provide Just Punishment

For the reasons set forth above in Sections A through D, a life sentence is a just punishment.

### F. Afford Adequate Deterrence to Criminal Conduct

A life sentence will afford adequate specific and general deterrence. Obviously, a life sentence will specifically deter this defendant from victimizing anyone else in his lifetime. Additionally, given the notoriety of, and public interest in, this case, a life sentence will have a greater impact than sentences in other matters. The message of a life sentence will reach a large number of people and the general deterrent effect will be greater than usual.

### G.    Protect the Public From Further Crimes of the Defendant

Given the nature and circumstances of this offense, and the history and characteristics of this defendant, a life sentence is necessary to protect the public from further crimes of the defendant.  The evidence at the competency hearing and at trial established, by a preponderance of the evidence, that the defendant is a pedophile who has victimized not only Ms. Smart, but other children as well.  The evidence further established that the defendant intended to continue kidnapping children to satisfy his deviant sexual desires and, indeed attempted two additional kidnappings after taking Ms. Smart.  Not only is the defendant a recidivist, but his refusal to acknowledge the wrongfulness of his conduct poses an even greater risk of future crimes against children. This defendant cannot be released back into society.

Taking into account the factors set forth in 18 U.S.C.  § 3553(a), a sentence of life is an appropriate and reasonable sentence in this case.  The United States asks this Court to expressly articulate that a life sentence would be imposed regardless of the guideline calculation and to set forth sufficient reasons to support a life sentence.

WHEREFORE, for the reasons set forth above, the United States asks this Court to sentence the defendant to a term of imprisonment for life.

RESPECTFULLY SUBMITTED this 17th day of May, 2011.

CARLIE CHRISTENSEN
United States Attorney


/s/ Felice John Viti
FELICE JOHN VITI
Assistant United States Attorney


/s/ Diana Hagen
DIANA HAGEN
Assistant United States Attorney


/s/ Dave Backman
DAVE BACKMAN
Assistant United States Attorney


/s/ Alicia Cook
ALICIA COOK
Special Assistant United States Attorney

36